UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MATTHEW KINERSON,                          )
                                           )    No.  14-CV-0216-JLQ
                    Plaintiff,             )
                                           )    MEMORANDUM OPINION
          vs.                              )    AND ORDER GRANTING MOTION
                                           )    FOR SUMMARY JUDGMENT
                                           )
                                           )
SPOKANE COUNTY, DEPUTY                     )
TIMOTHY JONES, DEPUTY JEFFREY              )
THURMAN, and CORPORAL JUSTIN               )
ELLIOTT,                                   )
                                           )
                    Defendants.            )
_____ )

     BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No.

14).  Response and Reply briefs have been filed. (ECF No. 27 & 33).  The court heard

oral argument on June 11, 2015.  Richard Wall appeared for Plaintiff.  Heather Yakely

argued the Motion on behalf of Defendants. For the reasons stated herein, the court grants

the summary judgment motion of the Defendants.

## I. Introduction

     This action was filed in state court on June 9, 2014, and removed by the Defendants

to this court on June 27, 2014. Plaintiff sought, and was granted leave to file an Amended

Complaint, which was filed on November 20, 2014. (ECF No. 12).  Plaintiff's claims arise

out of an encounter with the Defendant Deputy Sheriffs on May 23, 2013.  On that date,

the officers  responded to a report from Plaintiff's sister that he was potentially suicidal,

dangerous to others, and in possession of a handgun. The officers used a Taser on Plaintiff

and attempted to handcuff him.  Plaintiff brings claims of excessive force and failure to

train/supervise against the three Spokane County Deputy Sheriffs and their employer,

Spokane County, pursuant to 42 U.S.C. § 1983.  Plaintiff also asserts a state law claim of

negligence.

Defendants argue that the use of the Taser and attempted handcuffing, under the exigent circumstances, did not constitute excessive force, and the individually named Defendants are entitled to qualified immunity. (ECF No. 14, p. 11). Defendants further argue that Plaintiff has produced no probative evidence, including expert testimony, to support the failure to train claim against Spokane County. Defendant Spokane County argues that the evidence shows the Deputies had training on interacting with suicidal individuals. (ECF No. 14, p. 10). Lastly, Defendants argue that the state law negligence claim must fail because Defendants contend they acted in compliance with their polices and procedures and their actions were reasonable under the existing circumstances.

Plaintiff argues the force used was objectively unreasonable. Plaintiff states "that any and all force used against him was objectively unreasonable and a clear violation of the Fourth Amendment." (ECF No. 27, p. 9). Plaintiff contends there are several factual disputes which preclude summary judgment, including: 1) were there black objects on Plaintiff's waistband; 2) did he reach for his waistband; and 3) did Plaintiff yell at the officers to shoot him. On his claim against Spokane County, Plaintiff argues that a question of fact exists as to the failure to train claim. Plaintiff points solely to the deposition testimony of Deputy Jones that he was not aware of a policy that required officers to consider a subject's known medical condition or disability when using force against a person. (ECF No. 27, p. 12).

## II. Factual Background

In summary judgment proceedings, the facts are viewed in a light most favorable to the non-movant, in this case the Plaintiff. The following is a summary of the evidence presented in the summary judgment record.

Plaintiff Matthew Kinerson, a 45 year old, has Reflex Sympathetic Dystrophy Syndrome ("RDS") which causes him chronic pain and has hindered his ability to use and control his right arm. (Pltf's St. of Facts ¶ 1 at ECF No. 26). During the evening hours of May 23, 2013, Plaintiff, who resided at his parent's home in Spokane Valley, Washington,

was in an argument and confrontation with his father. (*Id*. at para. 3).  Plaintiff's sister, Andrea Montgomery, came to the house and Plaintiff also argued with her. (*Id*. at para. 4). Plaintiff decided to leave the residence in his car and packed some belongings into a backpack, including a pistol. (*Id*. at para 5-6).

Ms. Montgomery, Plaintiff's sister, a registered nurse,  called 911 at approximately 11:20 p.m. on May 23, 2013, and asked for assistance.  She reported that Plaintiff was "suicidal tentatively" and "potentially dangerous to others". (ECF No. 21-1, Transcript of 911 call).  She reported to 911 that she believed Plaintiff had a handgun on him.  She further told 911 that Plaintiff was "intense", "reactive", and that the situation had "escalated".  She also made reference to Plaintiff "snapping and taking a lot of people down with him."  She informed the 911 operator that Plaintiff made the statement that if confronted by the police, things would not go well. (ECF No. 20-1).  The sister also advised 911 that her brother suffered from a nerve condition that was extremely painful.

Plaintiff drove to a church and parked in the parking lot.  From his car he called and spoke with his sister-in-law.  Plaintiff  received a call from Spokane County Dispatch, which informed him that a family member had called 911. Deputy Sheriffs were dispatched to the location of the Plaintiff and his car.  Deputy Thurman was the first to arrive at approximately 11:40 p.m.  He parked his vehicle in a manner to block Kinerson's car and illuminated the car with his spotlight. (ECF No. 25-2).  He testified at deposition that Plaintiff exited his vehicle without being told to do so and was yelling and screaming. (*Id*. at p. 14).  According to Thurman, Plaintiff yelled, "Fucking shoot me, motherfuckers."  Thurman was concerned Plaintiff was trying to engage in "suicide by cop". (*Id*. at p. 17, 20).  Plaintiff denies making that statement.

Thurman testified he did not notice Plaintiff having any difficulty moving his arms. During contact with Dispatch, the Deputies were informed that the Plaintiff had a "medical problem," and "nerve pain"  but the Deputies were not informed of the specifics of the "problem."  (See ECF No. 25-5, the CAD log).  The CAD (computer-aided dispatch) log was relied upon by both parties at oral argument as evidence of the information

relayed through dispatch.  Counsel described that a "Txt" entry conveyed that the information was sent via text message to the officers' computers.  The sending of the message does not guarantee that it was seen by the officers, if for example the officer was out of his vehicle or otherwise engaged.  The Deputies ordered the Plaintiff to drop his gun.  Plaintiff claims he told the officers he "did not have a gun". (ECF No. 22, ¶ 3). While outside the car the Plaintiff did not have actual possession of the firearm which was sitting on the front seat of the car.  There is no evidence that in response to the officers' orders, Plaintiff informed the Deputies as to the actual location of the firearm.

Deputy Jones next arrived at the scene.  He saw Thurman giving verbal commands to Plaintiff.  (ECF No. 17, ¶¶ 6-8).  Jones heard Plaintiff yell something to the effect of "go ahead and shoot me mother fucker." (*Id*. at ¶ 9).  Again, Plaintiff denies making that statement.  Jones noticed Plaintiff's right arm was shaking and observed him move his left arm towards his waist, and also behind his back.  Jones observed "black gadgets" on Plaintiff's waistband.  (*Id*. at ¶ 10-11).  Jones drew his X26 Taser and shot Kinerson with the Taser in dart-mode.  This allowed Jones and Corporal Elliott to approach and attempt to handcuff Kinerson.  Jones states that Kinerson was yelling and actively resisting their efforts to handcuff him, and he deployed a second brief, 1-to-2 second, stun with the Taser. (*Id*. ¶ 13-14).  Jones testified that between using the Taser the first and second time, he realized that Kinerson had some sort of medical condition. (ECF No. 25, p. 9 of 54). Jones further testified that he was not aware of any policy concerning the use of a Taser that required him to consider the physical disabilities or medical condition of an individual before using the Taser. (*Id*. at p. 19-20).

Corporal Elliott, who was also on the scene, described Kinerson similarly as non-compliant, yelling, arguing, and actively resisting.   He observed Kinerson reach for his waist with his left arm and pull up his shirt. (ECF No. 18, ¶ 14).  Elliott, based upon his prior experience and Kinerson's angry and erratic behavior, positioned himself in anticipation of having to use deadly force. (*Id*. at ¶ 16).  As Elliott drew his firearm, Jones used the Taser.  Elliott then assisted Thurman in attempting to handcuff Kinerson.

Kinerson does not dispute the basic course of events that occurred on May 23, 2013--that he got in an argument with family members; that family members called 911 expressing concern as to the mental state and safety of Kinerson, police officers, and the public in general; that he drove to a parking lot and had in his possession a firearm and a knife; that officers responded; that a Taser was used; and officers attempted to handcuff him. Plaintiff does dispute some of the details. Plaintiff contends he was not angry and belligerent when the officers arrived. He claims he never yelled at the officers to shoot him. (Plft's St of Facts, ECF No. 26). Plaintiff claims he put his hands up, and did not reach for his waist band. However, Plaintiff states that he did not have "use and control" of his right arm and that his right arm was "beginning to fall toward my waist". (ECF No. 22, ¶ 1 & 10). Plaintiff admits he "reached down" with his left hand and pulled up the front of his shirt. (ECF No. 22, ¶ 10), Plaintiff agrees that the Taser was used, the officers attempted to handcuff him, and used the Taser again. He further states that while attempting to handcuff him, "at least one of the officers started kicking me." (ECF No. 22, ¶ 11). Kinerson does not contend that this "starting" of kicking was unrelated to the attempt to control him, that he suffered any injury of any sort from the alleged kicking, or that he required any medical treatment for any related injury. Both Thurman and Elliot have averred in declarations that they did not strike or kick Kinerson. (ECF No. 18 & 19). Plaintiff has submitted his own Declaration (ECF No. 22) and the Declarations of two neighbors, Tom Donahue (ECF No. 24 and Julie Eddy (ECF No. 23). The latter two state they believe the officers used excessive force on the Plaintiff. However, those persons were not aware of the circumstances giving rise to the officers contact with the Plaintiff including the call of the Plaintiff's sister to 911 advising that Plaintiff was suicidal and a risk to others, including, police, if contacted by the police.

When the deputies recognized Plaintiff's medical condition, the officers ceased in their attempt to handcuff him, and removed the one handcuff from his left wrist. They then helped Kinerson to a bench and waited for medical personnel to arrive.(Deft St. of Fact #50 - not disputed). Plaintiff was examined at the hospital and released within a few hours. (ECF No. 25, ¶ 27).

ORDER - 5

### III.  Motion to Strike

Defendants have filed a Motion to Strike (ECF No. 34) the declarations of Julie Eddy and Tim Donahue (ECF No. 23 & 24) that were filed in support of Plaintiff's opposition to summary judgment.  Defendant contends that these two alleged eye witnesses were not disclosed in initial disclosures, and that their names were not  provided in discovery until February 2, 2015.  This was after the January 3, 2015 deadline set in the Scheduling Order for Plaintiff to file his final list of trial witnesses.  Plaintiff did not timely file his list of trial witnesses, but rather belatedly filed it on May 8, 2015.

Defendants contend that although Eddy and Donahue were disclosed by name in February 2015, Defendants were not provided contact information until March, and Eddy and Donahue were unable to be reached using that information.  As the deadline for completing discovery was April 1, 2015, and the dispositive motion deadline was April 10, 2015, Defendants contend they were denied an opportunity to conduct discovery concerning these witnesses.

Plaintiff failed to respond to the Motion to Strike.  Plaintiff's lack of response could be deemed consent to the entry of an adverse Order. Local Rule 7.1 (d)("The failure to comply with the requirements of LR 7.1(a) or (b) may be deemed consent to the entry of an Order adverse to the party who violates these rules.").  The court's Scheduling Order provided a deadline of January 3, 2015, for disclosing witnesses and further provided that "only listed witnesses may testify." (ECF No. 8).  Plaintiff has not attempted to explain why the witnesses were  not timely disclosed, or dispute the dates on which they were disclosed.  Pursuant to Fed.R.Civ.P. 37(c)(1): "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Plaintiff has made no showing that the failure was substantially justified or harmless.  However, in the interest of a fair determination of all evidence available to the Plaintiff, the court has exercised its discretion and **DENIES** the Motion To Strike.

The ruling on that Motion does not adversely affect the Defendants' position on

their summary judgment motion, since the court has determined, even considering the two challenged Declarations, that the individual Defendants are entitled to summary judgment on the grounds of qualified immunity. The denial of the Motion to Strike has not changed the outcome of the summary judgment ruling. Plaintiff's dispute of facts relies almost exclusively on his own affidavit. (See ECF No. 26, p. 9-12).  Further, Defendants have conceded that Kinerson's Declaration creates questions of fact on the issue of excessive force.  That concession, however, does not preclude summary judgment for the individual officers based upon qualified immunity.   The court has considered the factual disputes which do exist, has viewed the facts in a light most favorable to Kinerson, and concluded that Defendants are entitled to qualified immunity.

**IV.  Discussion**

**A.  Summary Judgment Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the opposing party

must come forward with specific facts showing that there is a genuine issue for trial. *Id*.

Although a summary judgment motion is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(citations and quotations omitted).

### B. Qualified Immunity and Excessive Force

The individual officer Defendants, Deputy Thurman, Deputy Jones, and Corporal Elliott (hereafter "Defendants" or "officers") seek summary judgment on the basis of qualified immunity. The Ninth Circuit Court of Appeals and the United States Supreme Court have provided recent and clear guidance on the doctrine of qualified immunity. That guidance is succinctly set forth in the case of *LAL v. California Highway Patrol,* 746 F.3d 1112, 1116 (9th Cir. 2014). There, the court cited the Supreme Court case of *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), that the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". In *Pearson v. Callahan*, at page 236, the Supreme Court held that its prior case of *Saucier v. Katz*, 533 U.S. 194 (2001), did not set forth an "inflexible requirement" and that: "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." The Court recognized that "there are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." 555 U.S. at 237.

That a claim or issues of fact of excessive force do not preclude the court from considering qualified immunity is clearly established and not disputed herein. In *Saucier, supra* at page 202, the Supreme Court stated:

ORDER - 8

The approach the Court of Appeals adopted-to deny summary judgment any time a material issue of fact remains on the excessive force claim-could undermine the goal of qualified immunity to avoid "excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.

See also *Sheehan v. San Francisco,* 135 S. Ct. 1765, 1776 (2015) which succinctly states: "Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable search and seizures."

In *Brooks v. Seattle Police Department,* 661 F. 3d 433 (9th Cir. 2011) it was determined that qualified immunity applied to a police officer who three times tased a 7 month pregnant driver who refused to sign a traffic ticket for traveling 32 m.p.h. in a 20 m.p.h. zone, and then refused to leave her vehicle. While finding a valid claim of a Fourth Amendment violation, the Ninth Circuit (en banc) granted qualified immunity, stating: "Having determined that Brooks alleged a Fourth Amendment violation, we next consider whether the officers are nonetheless entitled to qualified immunity. That is, at the time the officers tased Brooks, was the constitutional violation described above 'sufficiently clear that every reasonable officer would have understood that what he (was) doing violated that right." *Id.* at 446 citing  *al-Kidd*, 131 S. Ct. at 2083 (quoting *Anderson*, 483 U.S. at 640).

The Supreme Court has recently reiterated that: "Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1774 (May 18, 2015). In order to be "clearly established," existing precedent must place the statutory or constitutional question beyond debate. *Id.*  "This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.*

The Ninth Circuit stated in *Mattos & Brooks v. Agarano  v. City of Seattle*, 661 F. 3d 433, 440 (2011)(en banc) that "qualified immunity shields an officer from liability even if his or her action resulted from a mistake of law, a mistake of fact, or a mistake

ORDER - 9

based on mixed questions of law and fact."

The 2014 Ninth Circuit *LAL* case, *supra,* at 746 F. 3d 1112, at pages 1116-1118, sets forth a summary of the application of the doctrine of qualified immunity in a case alleging excessive force, including the following:

> The reasonableness inquiry in an excessive force case is an objective one:  The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them.  *Graham v. Connor,* 490 U.S., 386, 397 (1989).  The question is not simply whether the force used was necessary to accomplish a legitimate police objective;  it is whether the force used was reasonable **in light of all the relevant circumstances.**  (Emphasis supplied).

The Supreme Court in *Anderson v. Creighton*, 483 U.S. 635 (1987)stated:

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that **every reasonable official would have understood that what he was doing violates that right.**  (Emphasis supplied.).

In the case, *sub judice,* the undisputed facts are that the officers, at around midnight, encountered the Plaintiff in his vehicle in a church parking lot.  The officers had been informed that the sister had described him as being armed with a gun, suicidal, and a danger to others including police. The officers yelled to the Plaintiff to throw down the gun. Those orders did not result in the throwing down of the firearm. Unknown to the officers was the fact that  the gun was sitting on the front seat of the car. Plaintiff reached down toward his waist with his left arm. The *quaere* on the qualified immunity claim, giving the Plaintiff the benefit of all favorable evidence, is whether every reasonable police officer in that situation would have then understood that tasering the Plaintiff and attempting to handcuff him, including "starting to kick" the Plaintiff, with no resultant injury, constituted a clearly established violation of the Plaintiff's Fourth Amendment right to be free from an unlawful seizure.  The answer is clearly no.

It is obvious and recognized by the courts that officers are often called upon to make "split-second" decisions and that such decisions, when challenged, must be judged from the circumstances then existing, rather than from the basis of hind-sight. *Graham v. Connor,* 490 U.S. 386, 396 (1989).

In *Messerschmidt v. Millender,* 132 S.Ct. 1235, 1244 (2012) the Supreme Court

held that "qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."  It is also important to keep in mind that: "Qualified immunity is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Scott v. Harris*, 550 U.S. 372,  376 n.2 (2007).

As set forth by the  Supreme Court in *Graham v. Connor*, 490 U.S.  385 (1989), the analysis under the Fourth Amendment is whether the use of force was reasonable.  Making the reasonableness determination "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The reasonableness inquiry is an objective test: "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.  In determining whether the force used was excessive, the court looks at the severity of the force used and the need for force. *Tekle  v. United States*, 511 F.3d 839, 844 (9th Cir. 2007).  In evaluating the need for force, the court may look to the severity of any crime at issue, whether a suspect poses an immediate threat, and whether a suspect is actively resisting or attempting to evade arrest. *Id.*  The most important *Graham* factor is whether the suspect posed an immediate threat to the safety of the officers or others. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011)(en banc).

Kinerson was not a suspect in a crime.  However, Kinerson's family had reported that he was a threat to himself and others, including  police, and that he was armed with a firearm.  The encounter occurred near midnight, and Kinerson had been reported by his sister as talking about "taking people down" and had himself told dispatch that if law enforcement approached "it would not go well." (ECF No. 22, ¶ 6).  When ordered to "drop" his gun, Kinerson did not do so because he was not then in direct possession of it, nor did he advise the officers that the weapon was in the vehicle.  There is no evidence that the officers knew the gun was in the car, as opposed to on the person of Kinerson.

ORDER - 11

Kinerson's Declaration states that he was lowering his right arm, as he could not control it, and that he "reached down" with his left arm towards his waist. (ECF No. 22, ¶ 10). Kinerson states it was "at that moment" he reached down that he was shot with the Taser. (*Id.*). Kinerson had a gun with him in the car, and admits he had a knife on his waistband. (*Id.* at ¶ 13). When Kinerson reached down towards his waist, a reasonable officer could have believed that he was about to use the knife, or that perhaps the gun was concealed on his person. The use of the Taser was reasonable in light of all the relevant circumstances.

The officers employed the use of non-lethal, rather than lethal force. Certainly a reasonable officer, under the circumstances then existing, would believe, based on the statements to 911 from his sister, and based on the fact that he was known to be armed with a firearm, that Kinerson was an immediate threat to the officers. The officers are entitled to qualified immunity on the claim that use of the Taser constituted excessive force.

Plaintiff argues that other actions of the officers, in addition to the use of the Taser, constituted excessive force. Plaintiff argues that "any and all force used against him was objectively unreasonable and a clear violation of the Fourth Amendment." (ECF No. 27, p. 9). That argument is not supported by the facts or the law. The officers were confronted with a potentially dangerous and volatile individual armed with a firearm and knife and were entitled to use some force in responding to the situation. The Ninth Circuit has stated: "We are aware of no case that would preclude a reasonable officer from believing there was probable cause to detain a person who alluded to committing suicide." *Hall v. City of Fremont*, 520 Fed.Appx. 609 (9th Cir. 2013). Here, Kinerson was armed with a firearm and a knife, his sister had informed 911 that he had "hateful fixations against people," had referenced "taking a lot of people down with him," and was a danger to police. (ECF No. 21-1, p. 7). In other cases of in person threats to police with a weapon, the use of deadly force has been found reasonable. <u>See</u> *Han v. City of Folsom*, 551 Fed.Appx. 923 (9th Cir. 2014)("Where a suspect threatens an officer with a weapon such as a gun or knife, the officer is justified in using deadly force.") <u>citing</u> *Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005).

ORDER - 12

The court recognizes there is a dispute of fact concerning whether Kinerson was attempting to comply with the directions of the officers or whether he was actively resisting. According to Kinerson, when the officers arrived he was afraid so he got out of the car and immediately went down on his knees and held his hands up. (ECF No. 22, para 8-9). He claims he told the officers he "did not have a gun and begged them not to shoot." *Id.* According to the officers on scene, Kinerson was yelling, screaming, arguing, actively resisting, and cursing at the officers to shoot him. Kinerson denies that claim.

The *Graham* analysis also allows, as part of the consideration of the totality of the circumstances, consideration of "whatever specific factors may be appropriate in a particular case." *Mattos*, 661 F.3d at 445. One factor for consideration is Plaintiff's medical condition/disability. See also *Bates v. Chesterfield County*, 216 F.3d 367, 373 (4th Cir. 2000)("Just like any other relevant personal characteristic--height, strength, aggressiveness--a detainee's known or evident disability is part of the Fourth Amendment circumstantial calculus."). Accepting for the purposes of this Motion that the officers were informed, or recognized, a disability affecting one arm, that does not mean Kinerson was not a threat. Kinerson had a functioning left arm and could have used the firearm or knife. Defendants used non-deadly force to neutralize a volatile situation. Officers are not required to use the most minimal amount of force.

In *LAL v. California*, 746 F.3d 1112 (9th Cir. 2014), the court once again stated that the "most important" of the *Graham* factors was the threat posed by the suspect. The Ninth Circuit stated:

> This is the crux of the appeal. The district court found both that [plaintiff] posed an immediate threat to the safety of the officers, and that, even if he did not, a reasonable officer could have thought he did. Both conclusions are sound.

*Id.* at 1117. Similarly here, the court finds that Kinerson posed an immediate threat to the officers, or at the very least, based on the undisputed information provided to 911 by Kinerson's sister, and the undisputed fact that Kinerson was armed with two deadly weapons, it was reasonable for the officers to believe that he posed an immediate threat. In *LAL*, the officers shot and killed an individual who advanced upon the officers armed with only a rock - - both the district court and Court of Appeals found the officers' actions

ORDER - 13

to be reasonable.  The Defendants in the case at bar faced a potentially more dangerous situation, and addressed it with non-deadly force.

As stated *supra*, the Plaintiff's Declaration does present disputed factual issues. Defendant's Reply Brief (ECF No. 33) concedes such, while at the same time asking the court to grant summary judgment.  Defendants attempted to clarify, or limit, that concession at oral argument to a concession that there is a question of fact as to whether Plaintiff was kicked during the encounter with the officers.  Neither of the Declarations of Eddy or Donahue (ECF No. 23 & 24), submitted by Plaintiff, state that they witnessed the officers kick Plaintiff.  Plaintiff's counsel stated at oral argument that the kick did not cause serious or lasting injury.  The entirety of the evidence of record supporting that allegation is one sentence in Plaintiff's five page Declaration which states that one of the officers, not identified, "started kicking me".  The Amended Complaint states that one of the officers, while attempting to handcuff Kinerson, and while Kinerson was telling the officer to let go of his arm, "reacted by kicking at Plaintiff". (ECF No. 12, ¶ 16).  The court does not find such a minimal allegation, which allegedly resulted in *de minimus* injury, sufficient to preclude summary judgment on the qualified immunity issue.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Even if there are disputes of fact from which a jury could find the officers could have used a lesser degree of force, the use of force was objectively reasonable under the totality of the circumstances and the officers are entitled to qualified immunity. See *Luchtel v. Hagemann*, 623 F.3d 975, 984 (9th Cir. 2010)(affirming district court's grant of summary judgment and stating that "if [probable] cause was insufficient or if force was excessive, there was also reasonable belief that arrest was warranted and that the amount of force used was necessary, and hence the officers are entitled to qualified immunity.") Defendants' Motion for Summary Judgment as to the claim of excessive force is **GRANTED**.

### C.  Municipal Policy or Custom

Spokane County, a municipality, is not liable under § 1983 for the acts of its employees on the basis of respondeat superior liability. *Monell v. Dept. of Social Serv*., 436 U.S. 658, 691 (1978).  A municipality is only liable if the constitutional violation is the result of an official policy or custom. *Id*. at 694 ("It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

The Supreme Court has stated that "there are limited circumstances in which an allegation of a failure to train can be the basis for liability under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).   A claim that Spokane County failed to adequately train its officers, may serve as the basis for liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id*. at 388.

The Amended Complaint does not specifically allege what policy or custom or failure to train allegedly caused harm to Plaintiff.  Rather, it vaguely alleges that the County "failed to provide adequate training and/or supervision ... with respect to the use of force against citizens". (ECF No. 12, Am.Complt. ¶ 22).  Plaintiff's brief asserts that the County failed to have a policy "that required or directed officers to consider a subject with a known medical condition or disability when using force against the subject." (ECF No. 27, p. 12).  Plaintiff's argument is that the officers should have treated him differently, or provided accommodation for his medical condition/disability.  Plaintiff could have conceivably pursued this claim under Section 1983 and the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 et seq., as was done in *Sheehan*, 135 S. Ct. 1765 (2015) but Plaintiff has chosen not to pursue an ADA claim.  Regardless, *Sheehan* is instructive.

In *Sheehan*, officers confronted a mentally ill woman, living in a group home, who was described by a treating social worker as a threat to others and was armed with a knife. Officers decided to enter her room in an attempt to neutralize the potentially dangerous situation and Sheehan approached the officers with knife in hand and was yelling.  The

Officers responded with deadly force and shot her several times. The Supreme Court stated: "The real question, then, is whether, despite these dangerous circumstances, the officers violated the Fourth Amendment when they decided to reopen Sheehan's door rather than attempting to accommodate her disability." 135 S.Ct. at 1775. The Supreme Court found "nothing in our cases suggests the constitutional rule applied by the Ninth Circuit." *Id*. On the question of whether law enforcement is required to provide accommodation to armed, violent, and mentally ill suspects in the course of bringing them into custody, the Court found no clearly established right. The Court further stated that to the extent consensus among the lower federal appellate courts could clearly establish a right, the consensus appeared to be that there was no right to accommodation, citing to *Bates v. Chesterfield County*, 216 F.3d 367, 372 (4th Cir. 2000)("Knowledge of a person's disability simply cannot foreclose officers from protecting themselves, the disabled person, and the general public."); *Sanders v. Minneapolis*, 474 F.3d 523 (8th Cir. 2007); and *Menuel v. Atlanta*, 25 F.3d 990 (11th Cir. 1994).

As there is no clearly established right to have police officers accommodate the disability of an armed and potentially violent individual in the course of bringing the suspect into custody, municipal liability cannot be based on the alleged failure to have a policy requiring such accommodation. Plaintiff's theory of municipal liability is not only legally insufficient, but is also factually lacking. Plaintiff's only evidence in the summary judgment record is that one officer was unaware of any policy. Deputy Jones was asked at deposition if he was aware of any policy that required the officers to consider "known physical disabilities" or "medical condition" when making the decision as to whether to use a Taser. (ECF No. 25-1, Depo. of T. Jones, p. 71-72). He answered that he was not. While this evidence establishes that Deputy Jones was unaware of a policy, it does not establish that Spokane County did not have a policy. Evidence that one officer was unaware of a policy is insufficient to support a claim. <u>See</u> *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.). Plaintiff conceded at oral

argument that he had no additional evidence on the policy issue.  As discovery has closed, Plaintiff has no further evidence to introduce at trial.  Further, as stated *supra*, it is not clearly established that the County was required to have such policy.

Defendant Spokane County's Motion for Summary Judgment on the issue of municipal liability is **GRANTED**.

### D.  Negligence

Defendants seek summary judgment on the state law negligence claim based on an argument that the Section 1983 claim and the negligence claim are based on the same facts. (ECF No. 14, p. 17).  Defendants also argue that they are entitled to "state law qualified immunity" under *McKinney v. City of Tukwila*, 103 Wn.App. 391 (2000).  In *McKinney*, the court stated: "State law qualified immunity rests on a different analysis than does qualified immunity under section 1983." Id. at 407.  Under Washington state law, an officer has qualified immunity from a tort claim where: 1) he carries out a statutory duty; 2) according to procedures dictated to him by statute and superiors; and 3) he acts reasonably. *Id.*  There is overlap between the Fourth Amendment excessive force inquiry and the state law qualified immunity test, because the Fourth Amendment analysis employs a reasonableness standard.  The *McKinney* court stated that if "the officers' conduct was reasonable under the circumstances ... the officers cannot be said to have acted negligently." *Id.* at 410.

In *Luchtel v. Hagemann*, 623 F.3d 975 (9th Cir. 2010), the court stated, in evaluating a claim of negligence under Washington law: "Officers cannot be liable for detaining a person for a mental-health evaluation under Washington law if the officers acted with good faith and without gross negligence." *Id*. at 984.  The officers here were responding to a 911 call of a potentially suicidal individual who a family member stated could also be dangerous to the officers and others. Because the officers' actions were reasonable under the totality of the circumstances, Defendants' Motion for Summary Judgment as to the state law negligence claim is **GRANTED**.

### V.  Conclusion

The Defendant officers' actions on the evening in question were objectively

reasonable under the totality of the circumstances.  They encountered Kinerson, near midnight, who was reported as threatening to take his own life, reported to be a danger to police officers and others, and who was armed with two deadly weapons.  They used non-lethal force, a Taser, to temporarily detain him.  They then attempted to handcuff him, and when they realized the medical problem with his arm, ceased trying to handcuff him and had him sit on a bench until medical personnel arrived.  The officers are entitled to qualified immunity, and the Motion for Summary Judgment is granted as to the excessive force claims under federal law and the state law negligence claim.  Defendant Spokane County's Motion for Summary Judgment on the municipal liability claim under § 1983 is granted, as Plaintiff has presented no evidence of an unconstitutional policy or custom.

**IT IS HEREBY ORDERED**:

1. Defendants' Motion to Strike (ECF No. 34) is **DENIED**.

2. Defendants' Motion for Summary Judgment (ECF No. 14) is **GRANTED**.

3. The Clerk is directed to file this Order, enter Judgment in favor of all Defendants and against Plaintiff dismissing the Amended Complaint and the claims therein with prejudice, and then close this file.

**IT IS SO ORDERED**.  The Clerk is hereby directed to file this Order, enter Judgment, and furnish copies to counsel.

**DATED** this 30th day of June, 2015.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 18